THE EASTERN RAILROAD IN NEW HAMPSHIRE AND THE EASTERN RAILROAD THEIR LESSEES, PLAINTIFFS OR PETITIONERS, *v.* THE CONCORD & PORTSMOUTH RAILROAD AND THE CONCORD RAILROAD THEIR LESSEES, DEFENDANTS.

Where, under a special act of the legislature, it was made the duty of the railroad commissioners to appraise the land of a railroad, in order to form a *just connection* with another railroad, and the award of said commissioners was uncertain and ambiguous, the court will give it such a construction as to reserve to the commissioners a full and fair legal exercise of the duties enjoined upon them, and only such, as was properly within their jurisdiction.

Under the laws of this State, the award of the commissioners is not deemed final and conclusive upon the parties, but is open to future examination and revision. Upon the complaint of an aggrieved party to such connection, the court will appoint a committee to review the same, and will sustain the proceedings of said committee when they conform to the law.

*W. H. Y. Hackett*, for the petitioners.

*S. N. Bell*, for the petitionees.

NESMITH, J.   This was a bill in equity, wherein the plaintiffs set out their existence and the location of the Eastern Railroad in New Hampshire, extending from the western line of the town of Seabrook, in this State, to the eastern side of the town of Portsmouth, in this county, on the Piscataqua river, and to the dividing line between this State and Maine ; and that their railroad has been built and in operation many years, and is now under a lease to the Eastern Railroad company as lessees.

The bill sets out that upon the petition of the Concord & Portsmouth Railroad to the railroad commissioners of this State, they proceeded on the 9th of October, A. D. 1861, to lay out or extend their road from the termination of said Concord & Portsmouth Railroad upon, over, and along a portion of said Eastern Railroad in New Hampshire, alleged to be for the distance of about 900 feet to a stake near Green street, in Portsmouth, thence northerly by one or more curves to Rindge wharf near the south-east corner of Portsmouth bridge ; the width of said track laid out varying from 15 feet to two rods ; and that such portions of the railroad track located as aforesaid, as was laid out upon the track or road-bed of the Eastern Railroad in New Hampshire, were to be used and occupied by said Concord & Portsmouth Railroad *in common* with said Eastern Railroad.   The bill further alleges that, on the same 9th day of October, 1861, the said Concord & Portsmouth Railroad leased their entire railroad, including the before named right to use and run over the before mentioned part of the track of the Eastern Railroad, for the term of 100 years, to said Concord Railroad, and thereupon, upon the same day, the said respondents entered upon the said track of the petitioners, and from that time to this, they have occupied and used said track, by their engines and cars, transporting freight and merchandise, and have thus continued to use the same, and claim they have the legal right, upon paying reasonable compensation, hereafter in like manner to use said track in common with the petitionees. And the petitioners say they cannot agree with the respondents as to the compensation for such use in common of the aforesaid track, and ask the court for the appointment of an impartial and disinterested committee to adjust the compensation therefor, according to the provisions of the statutes in such cases, made and provided.

Whereupon, by the assent of the parties and the authority of the court, Hon. Thomas M. Edwards, J. D. Sleeper and Edward Cutter, Esqs., were appointed a committee for the purpose prayed for in said petition.   And the said committee, on the 29th day of August, 1865, under due notice, met the parties in interest, and on that day, and at subsequent times, heard the same upon the merits of the application before them.   And at the last December Law Term of this court, they returned their report.   The committee state that at the opening of the hearing, and before proceeding therein, the counsel for the defendants submitted to them the position, that they were not liable to make to the petitioners any compensation for the use of their track, by them taken

and used, because damages were already appraised and awarded by the railroad commissioners therefor, and had been accepted by the petitioners, and that the defendants thereby became tenants in common with the plaintiffs of that part of the said Eastern Railroad track so taken and used by them as aforesaid ; and that, for that reason, chapters 1666 and 1847 of the Pamphlet Laws have now no application to their case. In support of this position, the committee say "the counsel laid before us a duly certified copy of the report of said commissioners, laying out the road as aforesaid, and also referred us to said laws." The committee did not sustain the position of the defendants upon the evidence produced in support of it, and proceeded to consider the merits of the application, and made up their award accordingly, *reserving*, however, the consideration of the aforesaid question to this court.

We now examine this question upon the evidence which was before the committee. Upon reference to the aforesaid report of the railroad commissioners, it evidently appears that they did take and appraise other lands beside the aforesaid track of the Eastern Railroad in New Hampshire. This appears from the description of said lands as returned. That part of the track to be *used* by the defendants is described to be for its whole length so taken from the point begun at, and extending to a switch on the Eastern Railroad, to be of the width of 7 1-2 feet from the centre of the same, while the remainder of the track laid out which curves off to the right of said track for some distance to the Rindge wharf, and from the lumber shed near said track, is laid out one rod on each side of the centre line thereof, or two rods wide. Upon this part of the track of the petitioners' land the barn of Annable was located. The award of said commissioners of the damages was to the owners of land and other property taken in Portsmouth. The language used was as follows, viz :

1. "To the Eastern Railroad in New Hampshire, four hundred dollars."

2. "To the owner of a barn standing on land of the Eastern Railroad in the possession of Chas. Annable, one hundred dollars."

It will be seen that the award may have been legitimately made for the land actually taken irrespective of the use of the track thereon. The language used by the commissioners in their award is quite general, not definite, and we think may be considered ambiguous in its terms.

We are not compelled from a fair construction of their report, to assume that the commissioners in their award to the Eastern Railroad, undertook to go beyond their jurisdiction. There were other lands taken and appraised by them adjoining the track of the Eastern Railroad, and we may fairly presume, therefore, that they meant to award damages for the land they had a right to appraise, which was not used by the Eastern Railroad for their track, rather than to fix a compensation for running on, and using the plaintiffs' track for all time to come. By the special act of June 27, 1861, under which the railroad commissioners derived their power and jurisdiction, it was provided, that if in the judgment of said commissioners, it shall become necessary for said Concord & Portsmouth Railroad to run over, or use any portion of the Eastern

Railroad in New Hampshire, the said commissioners shall lay out said road, in such manner, as to *connect* with said Eastern Railroad in New Hampshire.    And said Concord & Portsmouth Railroad shall have the right with their cars and engines to enter upon and use such portion of the petitioners' road, subject as to rates of compensation to all the liabilities and conditions, and entitled to all the benefits and privileges of the provisions contained in chapters 1666 and 1847 of the Pamphlet Laws.    The aforesaid chapter 1666 defines the terms and mode of *connecting* railroads in this State, and the special duties of the receiving or lower road, as to running or transporting by their own *motive* power the cars, passengers and freight of the upper road, at such a reasonable rate of compensation as the legislature may from time to time prescribe. The third section of this act prescribes, that in case any roads interested in such transportation, cannot agree as to such compensation, either party may, on giving the other three months notice, apply to the Superior Court, or any two justices thereof, who are disinterested, in vacation, for the appointment of an impartial and disinterested board of referees.    And the Superior Court, or said justices, on due notice to the opposite party, shall appoint such board of referees to adjust and determine the rates of compensation for transportation of passengers, &c., and *all matters of connection* between said roads.    And said referees, after giving due notice to the parties, and after a full hearing of the same, shall make their award thereon, which shall be valid and binding until three months after the close of the next session of the legislature, and for such further time not exceeding one year, as said referees may fix, unless sooner altered by the legislature.

If necessary, referees may be appointed to adjust differences in relation to other claims and accounts.    It was under this section of said act that this reference originated.    The act gives the referees but limited powers as to the time their award shall operate or continue.    The referees had power to determine and adjust all existing disputes as to matters of connection between said roads ; of course, to determine the mode or manner of using the motive power of the receiving road, and the rates of compensation for the use of cars, and the transportation of freight and passengers, and the employment of men, &c., and all matters establishing a just connection between them ; the award of the referees to be binding prospectively no longer than three months after the close of the session of the legislature next to be holden after its publication, or one year as the referees shall fix at their discretion.    It being understood, also, that the legislature may, at their session, which shall assemble next after the award made as aforesaid, take further control over the subject matter, upon the application of the aggrieved party, and prescribe their own rules and such reasonable relief or remedy as circumstances shall require.

The commissioners who acted under the law of 1861, as well as under the authority of the aforesaid chapter 1666, and who made their appraisal and report which was before the referees in this case, and is now before us, are presumed to have kept within the limits defined by law and usage in such cases.    Being a tribunal of limited jurisdiction, their

proceedings are to be construed strictly. No other presumptions are to be entertained in their favor, beyond the absolute requirements of the law giving them their power. The apparent intent and object of the act of A. D., 1861, was to enable the Concord & Portsmouth Road to obtain a more perfect connection with the Eastern Railroad, so as to give them the means to do a portion of their freighting business to greater advantage. The defendants wished to run over the track of the Eastern Railroad to reach the tide water, so that by means of this communication they might obtain the advantages incident to water transportation. To obtain their desired object, the Concord & Portsmouth Railroad, through the intervention of the commissioners aforesaid, ask that suitable rates of compensation may be fixed for the use of about 900 feet of the track of the petitioners' road, which has for many years past been enjoyed by them. The act contemplates that the defendants should have the power to run engines and cars upon the plaintiffs' track. The power to run your engine upon the track of another railroad is found, in practice, hazardous, therefore not often granted. In some of our railroad charters, the power is reserved to an upper road, in order to form a just connection with a lower road, to enter upon the same by the cars and engines of such upper road. In practice, the entry is no farther than to accommodate the passengers at the station, and to enable the lower road to couple the engines upon the cars of the upper road in the most convenient manner.

The plaintiffs in this case do not appear to receive aid either from passengers or freight by this communication with tide water. They are more likely to encounter increased risks from collision, in consequence of the use of foreign engines and cars upon the same track. Looking, however, at the jurisdiction which the several acts of the legislature have conferred upon the railroad commissioners, as usually interpreted and construed, we cannot infer from their report before us, that it was their intention in this case, for the consideration of $400 to be paid by the defendants, to assign to them for all future time, by their engines and cars, the free, unrestricted common use of 900 feet of plaintiffs' railroad track. We need not infer that the commissioners intended to act unreasonably or illiberally in this case, when it appears there were other lands belonging to the petitioners, irrespective of that embraced in their track, which they may have properly appraised and embraced in their award.

In this way, we may presume the commissioners to have made up a legal award of damages. We cannot claim for the commissioners the exercise of a power to give to the defendants the unrestricted right of running their engines and cars over the track of the plaintiffs for the distance of 900 feet, at any and all times, against their consent, and at the hazard of loss of property and life consequent to such experiments. We cannot suppose such claims were intended to be established by the award of the commissioners. On the contrary, it appears to us that the legislature has wisely reserved their control over this subject of connection between different railroads. And, generally, the doings of commissioners are presumed to be open to examination and revision,

either by the legislature themselves, or by the courts and committees appointed under their authority.    We are, therefore, of the opinion that the committee, or referees, selected in this case, were not foreclosed or prohibited by the previous action of the commissioners in the premises, from taking jurisdiction in this case and making their award upon the grounds assumed by them ; and, that their report rendered here should be accepted.

As to the remaining question, whether the judgment should proceed against the defendants jointly or separately, the bill alleges, and the fact is admitted, that the Concord Railroad has taken a lease of the Concord & Portsmouth Railroad for a great number of years, and now operates the same and is in the receipt of its income.

It may, therefore, be fairly presumed, that said lessee has assumed the pecuniary liabilities incident to the lessor at this time.    Therefore, judgment may proceed, and execution issue directly against the Concord Railroad, according to the finding of the referees in this case.